## Christmas Clubs.

SAYLOR, Dep. Att'y-Gen., Dec. 17, 1929.—We have your request to be advised whether or not what are popularly known as "Christmas Club," conducted by individuals, associations and incorporated institutions in this State, come within the provisions of the Banking Acts. We understand that it has been the practice for some years past for department stores, manufacturers and other large employers to receive from their employees deposits from week to week during the year, to be held by the employers or deposited by them in banking institutions for payment back to the employees at Christmas time. In some cases this activity has taken the form of a fund operated by an unincorporated association of individuals elected from the employees of the employer concerned, and in other cases it has been carried on by corporations acting directly with the employee. You ask for an opinion as to whether or not such Christmas funds are legally operated.

A particular example of this activity which has been brought to our attention by your department is that of a company conducting an unincorporated association in charge of individuals who are employees and possibly officers of the employer company. They receive deposits from the employees and place them on deposit in a bank, drawing from such deposit account from time to time for the purpose of loaning the money to their company employer and receiving such money back in time to make payment thereof to the employee depositors at such time as they desire to withdraw such deposits, particularly shortly before Christmas of each year.

The Private Banking Act of June 19, 1911, P. L. 1060, as amended by the Act of April 5, 1927, P. L. 106, and the Act of April 26, 1929, P. L. 813, provides as follows: "That, except as provided in section eight (8), no individual, partnership, or unincorporated association shall hereafter engage, directly or indirectly, in the business of receiving deposits of money for safe-keeping or for the purpose of transmission to another, or for any other purpose, without having first obtained from a board, consisting of the State Treasurer, the Secretary of the Commonwealth, the Secretary of Banking—hereinafter referred to as the 'Board'—a license to engage in such business. . . . ."

Section 8 provides for various exceptions, such as corporations authorized to do a banking business, hotel keepers, certain public service corporations, individuals complying with the requirements for the filing of bonds as private bankers with the Commissioner of Banking, those lawfully conducting a brokerage business, and those engaged in business as private bankers for a period of seven years prior to the approval of the act, etc.

Organizations such as that above referred to do not come within these exceptions. They are transacting a business of receiving deposits of money for safe-keeping and for the purpose of transmission to another, or for some other purpose, and by collecting such funds they violate the Private Banking Act.

There is no question that the collecting of such funds for the purpose of conducting a savings account comes within the terms of that act. In Com. v. Bilotta, 61 Pa. Superior Ct. 264 (1914), the court, deciding that the Act of June 19, 1911, P. L. 1060, was constitutional, stated the following: "The business of receiving deposits is so manifestly germane to and so universally associated with the business of banking that a general statute which in its title declares a purpose to provide for the licensing and regulating of private banking naturally suggests to the mind that the statute will make provision for the protection of those who deposit money in such banks. The receiving of deposits is a part of the business of such banks. The provisions of this statute which relate to the conditions upon which private bankers may be permitted to receive deposits are germane to the general subject of regulating the business of private banking expressed in the title of the statute. . . ."

You have called to our attention the practice of a certain loan company which, under a charter granted by the Commonwealth of Pennsylvania, is limited in purpose to the loaning of money to the public and to purchasing and selling various kinds of securities in connection with the conduct of said loan business. Under the guise of selling subscriptions to those bonds by weekly payments of small amounts on account of such purchase, this company is actually conducting a Christman Club and is not primarily endeavoring to sell its bonds. Such a proceeding has no connection with its loan business and is merely a subterfuge for transacting a private banking business. In its contract with the depositor it agrees to return the amount of the subscription at any time upon proper notice, and it does not insist at the end of the subscription payment upon delivering its bond to the subscriber, but gives him the opportunity to accept cash in lieu thereof, which, we understand, is the usual practice. Obviously, a corporation without banking powers cannot engage in such an undertaking. To do so it must have its charter amended and thereby come directly under the control of the Department of Banking. Its present practice of conducting what is generally known and is advertised as a "Christmas Club," under whatever guise, is illegal.

From C. P. Addams, Harrisburg, Pa.